THE STATE, EX REL. THE CLEVELAND CONCESSION CO., APPELLANT, *v.* CITY OF CLEVELAND ET AL., APPELLEES.*

(No. 23543—Decided October 26, 1955.)

*Mr. Morton M. Stotter,* for appellant.

*Mr. Ralph S. Locher,* director of law, and *Mr. William T. McKnight,* for appellees.

SKEEL, J. This appeal comes to this court on questions of law from a judgment entered for the defendant in the Common Pleas Court of Cuyahoga County. The action is one in man-

*Motion to certify the record overruled, March 28, 1956.

damus, seeking an order directing the respondent city of Cleveland, to rescind the awarding of a contract to the respondent The I & M Service Company, for the privilege of selling refreshments in the parks of the city and to award the contract to the relator The Cleveland Concession Company.

On February 7, 1955, the Council of the City of Cleveland adopted an emergency ordinance authorizing the sale of the right to operate the city's permanent and mobile stands for the sale of refreshments in the parks of the city of Cleveland. The ordinance became effective February 14, 1955.

Pursuant to the ordinance, the director of public property in and for the division of parks advertised for bids for concession rights to sell refreshments in the permanent concession buildings and mobile units in the various city parks as per specifications filed by the department. It was provided by the specifications that the duration of the proposed contract for such right could be for one, three or five years as authorized by the ordinance.

Two bids were submitted, one that of the respondent The I & M Service Company and the other that of the relator, The Cleveland Concession Company. The I & M Service Company bid $108,776 for a five year period, payable in yearly installments of $21,755, plus an expenditure of at least $5,000 per year for improvements and upkeep of the permanent concession building as provided by paragraph 3 and, particularly, paragraph 33-F of the specifications. The Cleveland Concession Company bid $65,000 for the concession privilege, and, with that exception, its bid was the same in all other respects as the bid of The I & M Service Company.

The board of control awarded the contract to The I & M Service Company, and on March 20, the contract was forwarded to them for signature. The contract was signed on April 21, 1955, and delivered to the city accompanied with a surety bond to secure the contract for a one year period instead of for the life of the contract. The I & M Service Company also deposited with the city a certified check for $5,500, payable to the city of Cleveland, with a letter authorizing the use of the proceeds of such check to purchase bonds at the beginning of each succeeding anniversary of the contract in the amount of the remaining liability. The letter provided:

"In connection with the contract being entered into with the city of Cleveland for the park concessions, this is to advise you that the city of Cleveland may retain the Fifty-Five Hundred Dollars ($5,500) which we deposited with it concurrently with the making of our bid until a satisfactory bond in the reduced amount applicable for each of the ensuing annual periods for the life of the contract be furnished to the city."

The city law department approved this manner of complying with the bond requirements of the specifications, the contract, with the approval of the law department, was accepted by the city and The I & M Service Company took possession of the park refreshment facilities. This action was then filed seeking an order in mandamus directing the city of Cleveland to cancel the alleged contract for failure to follow the specifications as to bond requirements and directing the director of public property to grant the concession rights in the parks to the relator as the second highest bidder. This request is founded on the provisions of Section 1.4508 of the Codified Ordinances of the City of Cleveland. From a judgment of the Common Pleas Court denying the writ and dismissing relator's petition relator appeals and claims the court erred in failing to grant its petition directing the city to award the contract to the relator as the second highest bidder.

There is but one section of the ordinances of the city of Cleveland dealing directly with awarding concession privileges. Section 1.4517 provides:

"No privilege or concession shall be granted in any public building, park, street, alley, boulevard or other public grounds of the city of Cleveland for a longer period than one year unless such privilege or concession for a longer period be expressly authorized by resolution of the council."

This section was complied with by the passage of the ordinance on February 7 as set forth on page 19 of the specifications. A five year contract was authorized. The sections of the specifications dealing with the bond requirements are Nos. 17 and 18. They provide:

"17 *Surety Bond*: The concessionaire shall furnish an indemnity bond to the city of Cleveland in the full amount of the contract price, as a guarantee of good faith on behalf of the con-

cessionaire that the terms of these specifications shall be complied with in every particular. Said bond shall be subject to the approval of the Director of Law of the City of Cleveland.

"18 *Release of Bond*: The concessionaire's bond will not be released until all the provisions of the contract have been fulfilled."

The terms of payment under the five year contract were provided by Section 58 C of the specifications, which provides:

"If the concession is for a period of five (5) years, the concessionaire shall pay one-fifth (1/5) of the price bid, at the time of the execution of said contract. Additional one-fifths (1/5) of the bid price shall be paid each succeeding year for a period of four (4) more years, at a time which shall be the anniversary date of the execution of said contract; the date of payment being that designated by the director of public properties and the commissioner of accounts."

The bond filed with the executed contract and approved by the law department provided in part that the surety would guarantee the performance of the contract "for the period—one year—ending April 21, 1956." The letter above quoted indicated that new bonds in lesser amounts would be written at the beginning of each anniversary of the contract in the amount of rent remaining due for the balance of the five year period.

There can be no doubt that a bond effective for a term of one year only does not secure performance of the concessionaire's obligations under the contract after the expiration of the first year and, for this reason, did not fulfill the requirements of the specifications, such specifications being "as a guarantee of good faith on behalf of the concessionaire that the terms of these specifications shall be complied with in every particular." There could be no protection to the city under the bond accepted and approved by the law department with respect to the performance of the obligations of the concessionaire coming due under the contract after the first anniversary of the agreement. The ability of the concessionaire to furnish a new bond to secure the performance of its remaining obligations under the contract is in no way secured to the city by simply depositing money to pay future premiums.

The bond does not comply with the requirements of the

specifications, and, upon the failure to tender a proper bond, the city had no legal right to enter into the contract and award the concession to The I & M Service Company. The tendered performance of the bidder must respond to the invitation to bidders, to have legal effect. 43 American Jurisprudence, 789, Section 46.

The right of the relator, however, to a writ of mandamus must be founded not only on the claim that The I & M Service Company has no legal right to the concession contract but also that under the authority of the Charter and ordinances of the city of Cleveland and the law, the relator has a clear legal right to be awarded the contract. Mandamus is not the proper remedy to test the legality of a contract which has already been executed under the alleged authority of the ordinances of the city where the relator has no personal interest in the controversy. 25 Ohio Jurisprudence, 985, Section 13; *State, ex rel. Skilton,* v. *Miller, Judge,* 164 Ohio St., 163, 128 N. E. (2d), 47, 49 A. L. R. (2d), 1279; *State, ex rel. Libbey-Owens-Ford Glass Co.,* v. *Industrial Commission,* 162 Ohio St., 302, 123 N. E. (2d), 23; *State, ex rel. Brophy,* v. *City of Cleveland,* 141 Ohio St., 518, 49 N. E. (2d), 175.

Upon this question (whether the relator is entitled to an award of the contract) the relator depends entirely on Section 1.4508 of the Codified Ordinances, which provides:

"Section 1.4508—*Return of Deposits.*

"Within five days after any contract shall have been formally awarded, but in no event later than forty (40) days after the opening of the bids, all deposits made with bids therefor shall be returned to the person making the same, except that made by the bidder to whom the award is made and the next lowest bidder. If such bidder to whom the award is made, shall execute the contract within five days after the award, or within such additional time as may be allowed by the awarding authority, and furnish, on all improvement contracts involving the furnishing of labor, or both labor and material, and on such contracts for the purchase or sale of material only as the commissioner of purchases and supplies shall deem necessary, bond or security for the performance of such contract, such deposit shall be returned. In case the bidder to whom such award is

made shall fail so to do, the award shall be vacated and the de posit forfeited as liquidated damages to the city, and shall be credited to the fund from which the contract would have been paid, and the contract awarded to the second lowest bidder. (Ord. No. 110-49, passed February 14, 1949.)''

This section is found in the chapter dealing with contracts between the city and independent contractors called upon to construct public improvements by the use of labor or labor and materials, ''and for the purchase or sale of material only as the commissioner of purchases and supplies shall deem necessary,'' and is directly concerned with ''return of deposits'' of the un successful bidder. By its provisions, if the bidder to whom the award is made fails to put up a bond as required by the specifications after the award has been made to such bidder, then such failure shall give the awarding authority the right to hold the deposit of the bidder as liquidated damages and award the contract to the second lowest bidder. However, the undisputed facts, as shown by the record, are that the bond was accepted upon the advise of the law department, and the parties proceeded in the performance of the contract. The first year's rent was paid, The I & M Service Company put in possession of the park refreshment facilities, and no forfeiture was declared for the failure to deposit a proper bond.

A reading of Section 1.4508 of the Codified Ordinances, *supra*, shows that the authority to let the contract to the next lowest bidder is discretionary, not mandatory. The interests of the public must be protected in the exercise, by the awarding authority, of its judgment not only as to the ability of the bidder to perform or render the contemplated service satisfactorily but also that the price he is willing to pay bears some reasonable relation to the value of the privilege granted. Here the difference between the bid of the highest bidder and that of the relator is almost $10,000 a year, or about 40 per cent lower than the bid of the respondent. If the highest bidder was financially unable to meet the specifications, sound judgment might dictate that the bids be rejected altogether and the offer of concession rights again be advertised as provided by law. The city council, in passing Section 1.4508 of the Codified Ordinances, could not have intended that a bidder should be awarded a contract

without regard of the right of the board of control to pass on the reasonableness of the bid and the ability of the bidder. Paragraph 14 of the specifications provides:

"*Rejection or Acceptance of Bids*: The city, through the board of control, reserves the right to accept or reject any and all bids, and any part or parts of any bid. In awarding a contract, the city reserves the right to consider all elements entering into the question of determining the responsibility of the bidder. Any bid which is incomplete, conditional, obscure, or which contains additions not called for, or irregularities of any kind, may be cause for rejection of bid."

There is, therefore, no clear right in the relator, under the facts in this case, to an award of the contract free of the right of the awarding authority to pass judgment on the reasonableness of the bid and the ability of the bidder, and for that reason relator is not entitled to a writ directing the director of public property to award it the park refreshment contract.

*Judgment affirmed.*

Kovachy, P. J., and Hurd, J., concur.